IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Troy D. Currence, #305631, ) | |
| ) | Civil Action No. 6:09-747-TLW-WMC |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Leroy Cartledge, Warden of ) | |
| McCormick CI, ) | |
| ) | |
| Respondent. ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the McCormick Correctional Institution, of the South Carolina Department of Corrections ("SCDC"), as the result of his York County, South Carolina, convictions and sentence for drug trafficking. The York County Grand Jury indicted the petitioner at the May 20, 2004 term of court for trafficking in cocaine, in an amount more than 28 grams (2004-GS-46-2394), and trafficking in crack cocaine, in an amount more than 28 grams (2004-GS-46-2395). Attorney Michael G. Matthews represented him on these charges. On October 20, 2004, and after the first two days of a jury trial, the petitioner pleaded guilty to second offense trafficking in cocaine, 28-100 grams, and to second offense trafficking in crack cocaine, 28-100 grams, before the

Honorable Lee S. Alford. Judge Alford sentenced him to two concurrent 17-year terms of imprisonment. The petitioner did not appeal his conviction or sentence.

Acting through attorney Tara Dawn Shurling, the petitioner filed a post-conviction relief (PCR) application (05-CP-46-1229) on May 11, 2005. In his application, he alleged the following grounds for relief:

> (1) The Applicant received ineffective assistance of counsel prior to and during his guilty plea proceeding in violation of his rights pursuant to the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 14 of the South Carolina Constitution.
>
> (2) The Applicant's Pleas of Guilty were not Voluntarily and Intelligently entered. The judgments and sentences against the Applicant were entered in violation of his rights pursuant to due process of law.

The State made its return on August 24, 2005.

The Honorable John C. Hayes held an evidentiary hearing into the matter on February 12, 2007, at the Moss Justice Center in York, South Carolina. The petitioner was present at the hearing, and Ms. Shurling represented him. Assistant Attorney General Jeanette Vanginhoven represented the State. The petitioner testified on his own behalf, and he presented testimony from Lorinda Lee Harvey and Dorothy Thomas. The State presented the testimony of trial counsel, Mr. Matthews.

On February 12, 2007, Judge Hayes filed an order denying relief and dismissing the application with prejudice. The order addressed the petitioner's claims that his guilty plea was involuntary and his trial counsel provided ineffective assistance. The order also addressed the petitioner's claim that counsel was ineffective for not presenting Ms. Harvey and Ms. Thomas as witnesses.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Robert M. Pachak initially represented the petitioner in collateral appellate

proceeding. On November 26, 2007, Mr. Pachak filed a *Johnson*[1] petition for writ of certiorari on the petitioner's behalf and petitioned to be relieved as counsel. Counsel presented only one issue in the *Johnson* petition:

> Whether petitioner's guilty plea was entered knowingly and voluntarily?

After the petitioner received notice that a *Johnson* petition had been filed, he apparently retained private counsel who, by way of a January 10, 2008, order, were permitted to substitute for Mr. Pachak as counsel. Thereafter, attorney Tommy A. Thomas and Tricia A. Blanchete represented the petitioner on certiorari. The petitioner filed a petition for writ of certiorari on February 6, 2008, raising two issues:

> I. Whether Trial Counsel Rendered Ineffective Assistance of Counsel Prior to and During the Petitioner's Guilty Plea?
>
> II. Whether The Petitioner's Guilty Plea Was Voluntarily and Intelligently Entered?

The State filed a return to the petition for writ of certiorari on May 8, 2008.

The South Carolina Supreme Court filed an order on November 19, 2008, in which it denied certiorari. It sent the remittitur to the York County Clerk of Court on December 5, 2008.

In his *pro se* petition now before this court, the petitioner raises two allegations:

> **GROUND ONE:** The trial court falsely and unconstitutionally mislead the Petitioner in stating the Petitioner's prior criminal record would not be considered in sentencing, and the trial judge punished Petitioner for asserting his right to trial.
>
> **GROUND TWO**: Petitioner's guilty plea was not entered knowingly and intelligently due to ineffective assistance of counsel.

---

[1] *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988).

3

On May 19, 2009, the respondent filed a motion for summary judgment. By order filed May 20, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his opposition to the motion for summary judgment on June 24, 2009.

## **APPLICABLE LAW**

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Ground One*

In ground one, the petitioner first alleges that "[t]he trial court falsely and unconstitutionally mislead the Petitioner in stating the Petitioner's prior criminal record would not be considered in sentencing." As the state courts' rejection of this claim was not contrary

4

to and did not involve an unreasonable application of clearly established Supreme Court precedent, this allegation fails.

At the guilty plea, the Assistant Solicitor made the following proffer of the petitioner's criminal background:

> <u>Ms. Colton</u> - Your Honor, the State would only add, in addition to the facts already presented at trial, that we intended to call an additional co-conspirator, that being Crystal Hope in this case. Her testimony would corroborate the existence of the conspiracy and Mr. Currence's involvement there and placing him at the head of this large scale drug conspiracy that was on-going from North Carolina and subsequently into the State of South Carolina. As far as the trailer, I know that we got into some testimony as to what was found there, the significant amount of drugs, well over a hundred grams of crack cocaine, a hundred grams of cocaine. The State's position would be that Mr. Currence was in constructive possession of that, his possessory interest in that trailer, as well as the on-going manufacturing, distribution and sale of significant quantities of crack cocaine well over into the kilos of cocaine from that --- that trailer and in York County in general. To substantiate the basis for a second offense, Mr. Currence was convicted in 1995 for simple possession of crack cocaine in North Carolina. That occurred in Gastonia. I think what's relevant for the court's information would be that this was an on-going conspiracy that dates back well over a decade. He had been arrested previously in 1991 for trafficking crack cocaine. That was dismissed in Gastonia (sic) County. He was arrested twice for trafficking cocaine in North Carolina, in Gaston County again, and that was dismissed --- what --- and the other charge resulted in a simple possession conviction. He was also arrested for murder by handgun in North Carolina in 1996, and that was ultimately NOL prossed by the Gastonia District Attorney's Office. I think what is prevalent and what has been shown at trial and --- everything indicates the high level of drug involvement that Mr. Currence was engaged in. The State feels that eighteen is a fair mark in this case and that that is what we would be asking for. I think that everything --- all the evidence that's been presented to the court thus far as well as the additional evidence the State would intend to have shown certainly justifies a finding of eighteen years in this case.

(App. 370-71).

Later, the Assistant Solicitor and the trial court had the following colloquy:

5

> The Court - What is the amount of drugs according to the report?
>
> Ms. Colton - Your Honor, as the testimony indicated, a significant amount of drugs were found, particles of drugs that had reduced weights found in various locations around the house. If it would be sufficient for the court, the amount of drugs that were found actually in the vents of this house --- cocaine was found in four Ziploc baggies. The weight of that cocaine was ninety-five point eighty-seven grams. The amount of crack cocaine found in similar ziploc bag, four separate packages, was ninety-nine point zero two grams, and an additional forty point six one grams of crack cocaine was found, as well in another vent located in the household. I can go through all the items and where they were found if need be.
>
> The Court - Well, that's all right. It substantially exceeds twenty-eight grams of —
>
> Ms. Colton - Correct, Your Honor.
>
> The Court - --- cocaine and crack cocaine —
>
> Ms. Colton - Yes, sir.
>
> The Court - --- and that's what I want to be sure of before I can accept the plea.
>
> Ms. Colton - Your Honor, if I may, one additional factor that I think the Court needs to be aware of is that six days previous to this a traffic stop was performed on Mr. Currence, not related to this investigation. Six thousand dollars --- well over six thousand dollars was taken off his person. Residue was found. It was tested positive for cocaine, and the State would've intended to show Lieutenant Lovelace to testify to that as well as other items that were taken from his person that she would testify that are indicative of high-scale drug activity.

(App. 372-74).

The petitioner did not dispute the facts as the Assistant Solicitor proffered them, and trial counsel did not object to her proffer (App. 374). However, after the trial judge had accepted the plea, counsel argued in mitigation that the trial court should not consider charges that had been dismissed, and the trial court assured counsel that he would not consider those charges when passing sentence on the petitioner:

6

> Defense Counsel - They're asking you to consider issues that have been dismissed; he has not been found guilty of. Those have been dismissed, and technically under the law can be expunged off his record, so, Your Honor, I would respectfully request that those items not be considered in his case.
>
> The Court - I assure you I will not consider those which were NOL prossed and dismissed. I don't think it's appropriate for the Court to consider those in sentencing.

(App. 376).

The petitioner testified at the PCR hearing that he had rejected a guilty plea offer prior to trial for a term of 15 years. He further testified that he did not accept a plea offer prior to trial because he was not guilty. The petitioner explained that his decision to accept the plea on the third day of trial was a result of counsel's advice. He stated, "Well, actually my attorney finally convinced me into taking a plea. He said that, this was words he told me. He said this is York County, they 90 percent of drug conviction rate, and that he feel that the State have met their burden of proof and by me hiring him as my attorney, he advised me to take the guilty plea" (App. 408-10).

Trial counsel testified at the PCR hearing that he was admitted to practice in 1992. He then spent four years working in the Sixteenth Circuit Solicitor's Office before going into private practice. Counsel testified that he relayed a pretrial plea bargain to the petitioner that carried a 12-year sentence, but the petitioner "was very emphatic that he did not want to accept the plea offer for 12 years" (App. 444-45). Counsel was prepared for a week-long trial in this case. When asked how the case ended in a guilty plea, counsel explained that he had told the petitioner that the petitioner's co-defendant, Pedrian Tribble, would testify against him. However, the petitioner refused to believe that Tribble would testify against him. Ultimately, Tribble did testify against him (App. 445-46). Counsel explained:

> Up to that point, we had a normal drug case going along in trial, normal motions, making the State go through the point of putting in every piece of evidence. They would go through [the process of laying a foundation for introducing the evidence] because I

7

> could not let them stop it. As a matter of fact, you'll see in the transcript there is one point where the judge said kind of can we speed this trial along, we could not because of the issues, we had to make sure every step was done accurately, and if there was a mistake made we would catch it. Pedrian was the turning point in the case. Meredith [Kitchens], who came after him, didn't help matters any and Crystal coming in as the third, she was going to be the third blow.

(App. 447).

Counsel further testified at the PCR hearing that there were three meetings that occurred regarding a plea after the second day of the trial. Counsel first discussed with the petitioner how Tribble badly hurt his case. Counsel testified that the prosecution's case was largely predicated upon a conspiracy: "[Tribble] had not only connected my client into the conspiracy, [Tribble] made him part of the ring leader of the conspiracy." Also, Tribble made it appear that the petitioner was the chemist in the conspiracy, which was "very damaging." Kitchens followed Tribble as a witness, and she corroborated the petitioner's role as a chemist, which counsel had earlier attempted to dispute through his cross-examination of Tribble (App. 447-48).

In his conversation with the petitioner after her testimony, counsel obtained the petitioner's consent to approach the Assistant Solicitor about a possible plea bargain. An offer of 15 to 18 years was made, which counsel relayed to the petitioner and told the petitioner to think about it. The petitioner and counsel met with the Assistant Solicitor the following morning, at the petitioner's request. In the meeting, the petitioner asked if he could get the 12-year plea bargain that had been offered earlier. The Assistant Solicitor refused and told him that she did not normally offer a plea bargain this late in the process and that he should plan for the trial to resume if he was not interested in a deal of between 15 and 18 years (App. 449-50).

The petitioner then asked to meet with Ms. Harvey, his girlfriend, to discuss the plea, and he and his trial counsel were allowed to meet with her. In a "tearful meeting," she

8

begged him not to plea. However, the petitioner told her that "he had to. He told her that when Crystal gets on the stand she's going to sink him." Counsel told Ms. Harvey that he was recommending that the petitioner accept the offer because, if he was convicted of trafficking over 100 grams, then he would have received a mandatory 25-year sentence (App. 450-52).

With respect to the prior charges that had been dismissed, the petitioner's counsel did not consider a motion to prevent the State from referencing the dismissed charges prior to allocution because his prior experience with the Solicitor's Office was that, generally, no such charges would be referenced. When the State mentioned the charges, counsel made the motion (discussed above) for the trial court not to consider those charges, and the trial court clearly agreed not to consider them. The trial court also stated his reasons for giving the sentence imposed. Likewise, counsel stated that he had been before Judge Alford on a number of occasions and his "experience with Judge Alford is if he says he's not going to consider a past criminal record when he gives his sentence," then he is not going to consider it (App. 466-67). The PCR court rejected the petitioner's claim that his plea was not knowing and voluntary (App. 481-86).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1986); *see also Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight").

While the Court in *Hill* adopted the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for allegations that trial counsel was ineffective in representation at a plea, "[t]he *Strickland* ineffective assistance of counsel standard is somewhat different in the

9

context of a guilty plea. In the context of a guilty plea, the petitioner must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and 'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (quoting *Hill*, 474 U.S. at 59 (1985)). Further, in assessing counsel's performance, a reviewing court must presume his conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 688-89. The reviewing court also must be highly deferential in scrutinizing counsel's performance and must filter the "distorting effects of hindsight" from the analysis. *See id.*

A sentence based on erroneous information is also illegal. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). If there is no evidence of false information, the petitioner's due process claim will fail. *Villafuerte v. Stewart*, 111 F.3d 616, 628 (9th Cir. 1997) ("[The petitioner] has failed to show the existence of materially false information relied on by the sentencer.). To prevail on such an allegation, the petitioner must show both an inaccuracy in the sentencing information and that the court relied on it. *See Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003) (citing *United States v. Tucker*, 404 U.S. 443 (1972)). Further, if the trial court says it has excluded certain items from consideration, the reviewing court must take such statements at face value. *United States v. Gonzales*, 765 F.2d 1393, 1397 (9th Cir. 1985).

Applying these standards to this case, the petitioner is not entitled to relief. The record is clear that it was the petitioner's decision to plead guilty, and defense counsel did not force him to do so (App. 451). The trial court found the plea was freely, voluntarily, and intelligently made (App. 374). The record shows that the petitioner's trial had taken a turn against him. He even told counsel that the next person to testify was "going to sink him" (App. 450). He was, very unusually, offered another plea deal during the trial that he decided to accept (App. 449). Furthermore, counsel's representation was not deficient even though

10

he did not move before the plea to bar any reference to dismissed charges, since his experience was that his former employer, the Solicitor's Office, did not reference such charges. Further, the petitioner cannot establish prejudice. He argues that if he had known that prior dismissed charges were going to be used by the trial court in sentencing, he would not have pleaded guilty. However, the petitioner is merely speculating that the trial court took these charges into consideration when sentencing him. When the State mentioned the charges, counsel made the motion, which is discussed above, for the trial court not to consider those charges, and the trial court clearly agreed not to consider them (App. 375-76). Again, the trial court's representation in this regard must be taken at face value. *Gonzales*, 765 F.2d at 1397. Moreover, as argued by the respondent, this allegation ignores that the State's evidence to support the trafficking charges was that the petitioner was engaged in an ongoing conspiracy to traffic, which is one way to establish trafficking under both the indictments and S.C. Code Ann. §§ 44-53-370(e) and 44-53-375(C) (Supp. 2009). Also, much of the prosecution's evidence had already been presented. Based upon the foregoing, the petitioner's allegation lacks merit.

Secondly in ground one, the petitioner alleges that the trial judge punished him for asserting his right to trial. This claim was not presented to the state supreme court on certiorari. If a petitioner before a federal district court fails to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A petitioner may establish a fundamental miscarriage of justice by showing that a constitutional error probably resulted in the conviction of one who is actually innocent. In

order to raise a claim of actual innocence, a prisoner "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

In this case, the petitioner cannot demonstrate cause for the procedural default and prejudice as a result of the alleged constitutional violation, or that failure to review the constitutional claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50. There is absolutely no evidence that the trial court punished the petitioner for asserting his right to trial. The portion of the record referenced by the petitioner (*see* mem. in supp. pet., docket no. 1-1 at 5-6 (citing App. 381-82)) simply does not support the conclusion that he has reached and ignores that, as a recidivist, he was subject to a potential mandatory minimum sentence of 25 years or a sentence of between 7 and 30 years for trafficking in crack cocaine. *See* S.C. Code Ann. §§ 44-53-375(C)(2)(b) & (3). Also, he faced a similar potential sentencing for trafficking in cocaine. *See id.* §§ 44-53-370(e)(2)(b)(2) & (c). Accordingly, this allegation is without merit.

### *Ground Two*

The petitioner's remaining allegation is that his guilty plea was not entered knowingly and intelligently because he received ineffective assistance of counsel. Specifically, he contends that counsel "failed to advise him of several important considerations and aspects of his on-going criminal trial that would have significantly impacted his decision to plead guilty," including (1) that state law requires the jury to pass upon the voluntariness of his statement before jurors could consider it; (2) that counsel could have mitigated the impact of the statement; (3) that certain issues could be raised on direct appeal; (4) that mere knowledge a crime was going to take place did not make him guilty; (5) that use of the house where drugs were found by friends and family members could have

12

rebutted "dominion arguments" by the prosecution and mitigated the surveillance evidence; (6) that prior inconsistent statements could be used to impeach witnesses against him; and (7) that prior dismissed charges could not be used to impeach him or other witnesses. He also claims that counsel was ineffective for failing to call Ms. Harvey and Ms.Thomas as witnesses.

Trial counsel testified that he had reviewed the discovery he had received with the petitioner before the trial. He also discussed potential motions and defenses with his client because "[h]e has to give me the reasons why I should do certain motions." This included the motion to suppress the search warrant, the *Jackson v. Denno* suppression motion and inconsistent statements of witnesses. He also discussed with the petitioner that a plea would waive the petitioner's right to preserve the earlier evidentiary challenges for appellate review. Counsel also had the petitioner execute an affidavit of guilty plea to ensure a knowing and voluntary waiver of rights and entry of plea (App. 444-46; 455-58). Counsel testified that he never told the petitioner that he could be impeached with prior arrests that were dismissed (App. 452). Counsel also stated that he had spoken to Ms. Lorinda Harvey several times before trial because she was "very much involved" in the petitioner's life at the time. However, he explained that character witnesses are limited in terms of the testimony they can provide. He further testified that he had explained to the petitioner that "there was a lot of extracurricular circumstances that were going on" in the case and that Harvey was accused of driving Tribble (the co-defendant) to the hotel (App. 452-54). Further, counsel described Harvey and Thomas as "secondary witnesses" because neither was present at the trailer where the drugs were located.

The affidavit signed by the petitioner was received at the October 2004 guilty plea as the court's exhibit 4, and a copy was provided to the PCR judge (App. 362, 457-58; *see* resp. m.s.j. attach. 9). This affidavit avers that the petitioner (1) was 34 years old; (2) had a 10th-grade education; and (3) that he can read, write and understand the affidavit. The

13

affidavit contains a section entitled "Waiver of Constitutional Rights," in which the petitioner indicated that he both understood and was waiving (1) his right against self-incrimination; (2) his right to a jury trial; and (3) his right to confront and cross-examine the witnesses against him. The affidavit further represents that the petitioner understood the nature of the charges against him; that his plea admitted his guilt of these charges; that his plea waived any defense(s) he might have to the charges; and that the plea waived his right to challenge whether his statement was freely and voluntarily given (resp. m.s.j. attach. 9). The trial court conducted a similar waiver of trial rights at the guilty plea (App. 364-68).

The PCR court rejected the petitioner's allegations that counsel (1) "gave up" when counsel told him that the percentage of drug convictions in York County, at that time, was 90% and that the State had met its burden of proof; and (2) allegedly failed to give the petitioner "a mini-course in all aspects of criminal law." The PCR court also rejected the petitioner's claim that counsel was ineffective for not presenting Ms. Harvey and Ms. Thomas as witnesses (App. 481-85). The court noted that Ms. Harvey was the petitioner's common law wife at the time of his plea. At the PCR hearing, she testified that the petitioner was a good provider, but she did not like him hanging around with his drug dealing cousin. The court also noted that Ms. Thomas was Ms. Harvey's sister and one of the girlfriends of the petitioner's co-defendant, Tribble. Tribble never told Ms. Thomas that the petitioner was involved in his drug business. The PCR court found that the testimony of these two witnesses added nothing whatsoever to the value of the petitioner's position (App. 485).

The PCR court's rejection of the petitioner's claims was not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. Furthermore, this court may not grant relief based upon the PCR court's factual findings unless they are objectively unreasonable. The petitioner clearly has not rebutted the presumption of correctness of the those factual findings by clear and convincing as required by Section 2254(e)(1).

14

As set forth above, the record reflects that counsel had a strategic reason for not calling Harvey and Thomas as witnesses; they were not present at the trailer where the drugs were located, and they had only limited value as character witnesses if the trial had proceeded to the time for such witnesses. Further, any matters on which the petitioner was not advised involved tactical matters not requiring his consent or waiver. As the Supreme Court explained in *Florida v. Nixon*, 543 U.S. 175, 187 (2004), "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy. *Strickland*, 466 U.S., at 688 . . . . That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.' *Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988) (an attorney has authority to manage most aspects of the defense without obtaining his client's approval)." Based upon the foregoing, this allegation also lacks merit.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the respondent's motion for summary judgment (doc. 11) be granted and the habeas petition be dismissed.

s/William M. Catoe
United States Magistrate Judge

January 19, 2010

Greenville, South Carolina

15